# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

STEPHEN M. SEELIG and VIKKI L. SEELIG,

     Plaintiffs,

v.

OLD VEGAS MANOR AND ESTATES HOMEOWNERS ASSOCIATION, et al.,

     Defendants.

Case No.: 2:20-cv-01976-APG-EJY

**Order Granting in Part
Motion to Dismiss and
Granting in Part Motions for Partial
Judgment on the Pleadings**

[ECF Nos. 6, 52, 55]

Plaintiffs Stephen and Vikki Seelig sue Old Vegas Manor and Estates Homeowners Association, Old Vegas Ranch Landscape Maintenance Association, First Service Residential NV, Tommy Uribe, Larry Fresinski, Margaret Gubler, Marla Howard, and Ricky McAnally,[1] alleging 34 claims arising from contentious neighborhood disputes.  Defendant McAnally moves to dismiss; all defendants except McAnally and Old Vegas Ranch Landscape Maintenance Association (OVRLMA) move collectively for partial judgment on the pleadings; and OVRLMA moves separately for partial judgment on the pleadings.  Overall, the defendants dispute claims 2, 5, 6, 8, 10, 12-16, 22, and 26-34 of the complaint.  The remaining claims are not now at issue except for the defendants' argument that Mrs. Seelig fails to state a claim for any of her counts.

I grant in part McAnally's motion to dismiss and grant in part both motions for partial judgment on the pleadings.  The parties are familiar with the facts, so I discuss them below only insofar as they relate to my decisions.

/ / / /

---

[1] The parties capitalize McAnally's name differently (i.e., "Mcanally" and "McAnally").  For now, I adopt the capitalization used in the court's docket.

# I.    **ANALYSIS**

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  The complaint must set forth coherently "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  To survive a motion to dismiss, a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted).  Allegations of a pro se complainant "are held to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quotation omitted).  Although I "construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

I apply a two-step approach when considering motions to dismiss.  First, I must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Iqbal*, 556 U.S. at 678; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013) (quotations omitted).  Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248 (quotation omitted).  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

1    Second, I must consider whether the well-pleaded factual allegations allege a plausible

2    claim for relief. *Id.* at 679.  A claim is facially plausible when the complaint alleges facts that

3    allow the court to draw a reasonable inference that the defendant is liable for the alleged

4    misconduct. *Id.* at 678.  Where the complaint does not permit the court to infer more than the

5    mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the

6    pleader is entitled to relief." *Id.* at 679 (quotation omitted).  When the claims have not crossed

7    the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at

8    570.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-

9    specific task that requires the [district] court to draw on its judicial experience and common

10   sense." *Iqbal*, 556 U.S. at 679.

11   A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss,

12   so "the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c)

13   analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Accordingly, I

14   follow the same process for both motions.

15   **a.  McAnally's Motion to Dismiss (ECF No. 6)**

16   The Seeligs allege that McAnally engaged in a civil conspiracy to obstruct their access to

17   a neighborhood pedestrian gate (claim 26) and that he subjected them to intentional infliction

18   emotional distress (IIED) (claim 30).  McAnally moves to dismiss both claims, arguing that I

19   lack subject matter jurisdiction, that supplemental jurisdiction should not apply, that the Seeligs

20   do not plausibly allege prima facie civil conspiracy or IIED claims, and that Mrs. Seelig is not

21   connected to any relevant facts such that she may state a claim.

22   / / / /

23   / / / /

### i. **Jurisdiction**

McAnally argues that I lack subject matter jurisdiction over the Seeligs' two claims against him and that supplemental jurisdiction should not apply.  The Seeligs respond that I have subject matter jurisdiction over their federal claims against other defendants, so I should exercise supplemental jurisdiction over the state law claims against McAnally.

I have original jurisdiction under 28 U.S.C. § 1331 where "a federal right or immunity is an element, and an essential one, of the plaintiff's cause of action." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1086 (9th Cir. 2009) (citations and internal quotations omitted).  I may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  Where "a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding," they share a common nucleus of operative fact. *Id.*

I may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Should one of these factors be present, I consider whether continuing to exercise supplemental jurisdiction would promote economy, convenience, fairness, and comity. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997).  Whether to exercise

supplemental jurisdiction lies within my discretion. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1090 (9th Cir. 2008).

The Seeligs' Americans with Disabilities Act (ADA) and Fair Housing Act (FHA) claims fall within my original, federal-question jurisdiction.  Those claims arise in part from disputed access to common elements located in the Old Vegas Manor and Estates subdivision, including the pedestrian gate that the Seeligs allege McAnally conspired to obstruct. ECF No. 11 at 35-36, 39-40.  The Seeligs further allege that this obstruction contributed to their emotional distress. *Id.* McAnally's conduct underlies both the federal and state claims, so those claims share a common nucleus of operative fact such that they comprise the same case or controversy.  In other words, one would ordinarily expect to resolve all claims arising from the same gate dispute in a single judicial proceeding.

McAnally does not argue that the state law claims against him are novel or complex, that they predominate over the federal claims pending against other defendants, or that exceptional circumstances exist such that supplemental jurisdiction should be disfavored.  Regardless, the claims against him are sufficiently intertwined with the federal claims that the goals of economy, convenience, and fairness favor exercising supplemental jurisdiction.  I will exercise supplemental jurisdiction over the Seeligs' claims against McAnally.

## ii.  **Civil Conspiracy (Claim 26)**

McAnally argues that the Seeligs fail to state a claim for civil conspiracy because they do not allege an underlying tort.  The Seeligs respond that the alleged conspiracy sought to engage in unlawful conduct.

1    Under Nevada law, "civil conspiracy liability may attach where two or more persons

2 undertake some concerted action with the intent to commit an unlawful objective, not necessarily

3 a tort." *Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1052 (Nev. 2015).

4    At this stage, the Seeligs plausibly allege that McAnally and others coordinated to block

5 access to the pedestrian gate. ECF No. 11 at 36.  That objective could be unlawful under the

6 ADA.  It is immaterial at this stage that the Seeligs do not allege ADA violations against

7 McAnally, as the civil conspiracy cause of action does not require concurrent allegations that a

8 defendant in fact accomplished the unlawful objective.  I therefore will not dismiss claim 26.

9    ### iii.  IIED (Claim 30)

10    The Seeligs accuse McAnally of IIED based on his alleged participation in the

11 obstruction of the pedestrian gate, his reporting of "bogus" information about Mr. Seelig to a

12 veteran suicide hotline, his disparaging remarks about the couple to neighbors, his criticism of

13 their religion, and his filing of "numerous police reports making outrageous claims" concerning

14 them. ECF No. 11 at 39-40.  McAnally argues that the Seeligs fail to state a claim for IIED

15 because (1) the alleged underlying conduct was not extreme and outrageous, (2) the Seeligs fail

16 to plead physical injury or illness, and (3) communications to the police and to the suicide

17 hotline are privileged.[2]  The Seeligs respond that some of the underlying conduct was extreme

18 and outrageous, and they reassert the allegations in their complaint.

19    To state a plausible IIED claim under Nevada law, the Seeligs must allege "(1) extreme

20 and outrageous conduct with either the intention of, or reckless disregard for, causing emotional

21

22
23    [2] I do not consider McAnally's argument on qualified privilege.  He contends that his statements to the police and the suicide hotline are protected but relies on cases in which qualified privilege applied to defamation claims based on Hawaiian law.  Without more, he provides an insufficient basis for dismissal given the different cause of action in a different jurisdiction.

distress; (2) severe or extreme emotional distress suffered by the plaintiff[s]; and (3) actual or proximate causation." *Jordan v. State ex rel. Dep't of Motor Vehicles and Pub. Safety*, 110 P.3d 30, 52 (Nev. 2005) (en banc).  I make the initial determination as to whether a reasonable jury could find conduct to be extreme and outrageous. *See Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) (citing Restatement (Second) of Torts § 46 cmts. h, j) ("[W]hether defendants['] conduct may reasonably be regarded as so extreme and outrageous as to permit recovery are questions for the Court to answer.").  Extreme and outrageous conduct "is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotations and citation omitted).  "Persons must necessarily be expected and required to be hardened . . . to occasional acts that are definitely inconsiderate and unkind." *Id.* (internal quotations and citation omitted).  IIED liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Welder v. Univ. of S. Nev.*, 833 F. Supp. 2d 1240, 1246 (D. Nev. 2011) (internal quotations and citation omitted).[3]

Furthermore, "in cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of a physical impact, proof of serious emotional distress causing physical

---

[3] *Compare, e.g.*, *Rivera v. Corr. Corp. of Am.*, 999 F.3d 647, 655 (9th Cir. 2021) (holding that a reasonable jury could find that a prison's detention of a man for 355 days without arraignment, while ignoring his pleas for counsel or a court appearance, constituted extreme and outrageous conduct for IIED purposes), *with Garity v. APWU Nat'l Labor Org.*, 655 F. App'x 523, 525 (9th Cir. 2016) (holding that a union's conduct was not extreme and outrageous when it colluded to fire a plaintiff, arranged a six-day work week for the plaintiff, and where the union was otherwise "inconsiderate or unkind" to the plaintiff) *and Wilson v. Otto*, 297 F. App'x 681, 682-83 (9th Cir. 2008) (holding that ostracism, unfriendly treatment, and unwelcome physical consolation were collectively insufficient to establish extreme and outrageous conduct for IIED purposes).

injury or illness must be presented." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (internal quotations omitted).  The physical impact requirement may not be satisfied by pleading "general physical or emotional discomfort." *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 483 (Nev. 1993); *see also Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 933 (D. Nev. 2010) (finding that insomnia, nightmares, general nervousness, and "a purely emotionally upsetting situation" are insufficient to support an IIED claim under Nevada law, and explaining that objectively verifiable evidence, like a need for "psychiatric assistance or medication," are necessary to meet the physical manifestation requirement).

Most of the Seeligs' well-pleaded allegations do not constitute extreme and outrageous conduct such that they present a plausible IIED claim.  The disparaging, unkind, and criticizing comments McAnally allegedly made are the sort the Seeligs should be hardened to endure. Blocking a non-essential pedestrian gate is not outside all possible bounds of decency or utterly intolerable in a civilized society.  Similarly, the Seeligs do not sufficiently plead that McAnally's filing of police reports plausibly constituted extreme and outrageous behavior. *See Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994) (applying Texas law and concluding that submitting a false police report that a person was intoxicated or using drugs is not a sufficient basis for IIED).  Whether filing false police reports could rise to the level of extreme and outrageous conduct is context dependent.  The Seeligs offer no details about the nature or circumstances of the alleged reports.  Without more, I cannot conclude the Seeligs plausibly allege the reports were extreme and outrageous.

However, the Seeligs plausibly allege that McAnally's submission of "bogus" information about Mr. Seelig to a veteran suicide hotline could qualify as extreme and outrageous. *See* ECF No. 11 at 39.  It is reasonable to infer from this allegation that McAnally

knew of Mr. Seelig's status as a veteran because of the hotline he allegedly called.  The

implications of a false call to a veteran suicide hotline could be complex and severe, and it is

reasonable to infer that both Seeligs could be burdened by its consequences.  Taking as true the

Seeligs' well-pleaded allegations that the information conveyed was in fact "bogus," the call

could plausibly have been extreme and outrageous.

But the Seeligs do not identify physical injury or illness sufficient to state a claim.

"[A]nxiety, oppression, worry, frustration, anguish, embarrassment, distress, sleeplessness, grief,

anger, nightmares, paranoia, social isolation, pain, suffering, public humiliation, distrust,

sadness, depression, fear of answering their door, and loss of enjoyment of life within the

community" are not actionable, physical impacts for purposes of IIED. ECF No. 11 at 40.  The

Seeligs do not allege, for example, that they sought psychiatric help in response to McAnally's

alleged misconduct.

As a result, I dismiss claim 30.  Amendment may not be futile, so the Seeligs may amend

their complaint to the extent that they can provide plausible factual allegations that McAnally

engaged in conduct that was both extreme and outrageous and resulted in physical impact.  For

example, if the Seeligs still wish to re-allege IIED based on the police reports and feel that facts

exist to do so, they must plead the circumstances of the reports and their impact on the couple in

more detail.  In other words, the Seeligs should explain why the reports were filed, what was

extreme or outrageous about filing those reports, and what, if anything, happened as a result.

They should further keep in mind that the conduct alleged must be outside all possible bounds of

decency.  Petty neighborhood disputes will not suffice.  Finally, even where extreme and

outrageous conduct might exist (for example, the alleged call to the suicide hotline), they must

properly plead physical impact.

iv.  **Mrs. Seelig**

McAnally argues that Mrs. Seelig fails to state a claim for civil conspiracy and IIED because she is not connected to any factual allegations in the action.  The Seeligs respond that they were collectively targeted and harmed by the alleged bad acts and that McAnally assaulted Mrs. Seelig during a confrontation that occurred at the blocked pedestrian gate.

Mrs. Seelig plausibly alleges that the obstruction of the pedestrian gate constituted an unlawful objective with respect to her, and not just with respect to her husband, based on ADA associational discrimination.  Under the ADA, it is unlawful to discriminate against someone "because of the known disability of an individual with whom [that someone] is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).  Courts have permitted associational discrimination claims under circumstances conceptually similar to those here. *See, e.g.*, *Huynh v. Bracamontes*, No. 5:16-cv-01457-HRL, 2016 WL 3683048, at *3 (N.D. Cal. July 12, 2016) (recognizing a right of action where a hair salon was accessible to a mother but inaccessible to her disabled daughter, thereby barring the mother from getting her hair cut "while enjoying the companionship of her daughter"); *George v. AZ Eagle TT Corp.*, 961 F. Supp. 2d 971, 974-76 (D. Ariz. 2013) (recognizing a right of action where a shopping center was accessible to a father but inaccessible to his disabled son, thereby deterring the father from enjoying the shopping center).  Here, Mrs. Seelig plausibly alleges that she may not access or enjoy certain common elements in Mr. Seelig's presence.  She thus states a plausible claim for civil conspiracy at this stage.  Likewise, it is plausible at this stage that McAnally's "bogus" call to the veteran suicide hotline could amount to extreme and outrageous conduct with respect to Mrs. Seelig, though I still dismiss that claim for failure to plead physical impact.

1    I do not consider any new factual allegations raised in the Seeligs' opposition brief.  If

2    Mrs. Seelig wishes to raise new assault claims or use those allegations to expand on her IIED

3    claim, they must appear as well-pleaded allegations in an amended complaint.

4    **b.  Motions for Judgment on the Pleadings (ECF Nos. 52, 55)[4]**

5    The defendants' motions for judgment on the pleadings seek to dismiss: the Seeligs'

6    contract claims (12, 13, and 14) as to defendants Uribe, Gubler, and Fresinski; their ADA claims

7    (2, 5, 6, 8, and 22) as to all defendants named under those claims; four of their state statutory

8    claims (10, 15, 16, and 31) as to all defendants named under those claims; their IIED claims (27,

9    28, and 29) as to all defendants named under those claims; their respondeat superior and

10   negligent supervision claims (32, 33, and 34) as to the only defendant named under those claims;

11   and all remaining claims brought by Mrs. Seelig.

12   **i.  Contract claims as to Uribe, Gubler, and Fresinski (Claims 12, 13, 14)**

13   The Seeligs allege in the complaint that Uribe, Gubler, Fresinski, Old Vegas Manor and

14   Estates (OVME), and OVRLMA breached the OVME and OVRLMA community covenants,

15   conditions, and restrictions (CC&Rs).  They also allege breach of the implied covenant of good

16   faith and fair dealing against those same defendants except for OVRLMA.  Uribe, Gubler, and

17   Fresinski move to dismiss the claims as to them because the complaint alleges the Seeligs

18   entered into contracts with only the two associations, not with the individual defendants, so no

19   enforceable contracts exist between them and the Seeligs.  The Seeligs respond that the CC&Rs

20   are enforceable between them.  OVME and OVRLMA do not move on these claims.

21   While the Seeligs name Uribe, Gubler, and Fresinski in the section headings of claims 12,

22   13, and 14, they do not adequately explain the capacities in which they sue them, the nature of

23

---

[4] I address these motions together because they raise similar arguments.

the contracts between them, or the theories of breach applicable to them.  The Seeligs do not

indicate in the complaint whether they sue Uribe, Gubler, and Fresinski in their individual

capacities or as agents of the associations.  They likewise do not plead that the CC&Rs may be

enforced among community members.  Instead, they plead only that "[p]laintiffs entered into a

valid contract with the OVME" and "[p]laintiffs entered into a valid contract with the

OVRLMA." ECF No. 11 at 24-25.  They likewise do not plead the ways in which Uribe, Gubler,

and Fresinski breached as individuals, assuming the CC&Rs are enforceable among individual

community members.  As a result, the complaint does not provide adequate notice of the nature

of the Seeligs' allegations against Uribe, Gubler, or Fresinski.  I do not consider allegations

raised for the first time in the Seeligs' opposition brief.  I therefore dismiss claims 12, 13, and 14

as to Uribe, Gubler, and Fresinski.

Amendment may not be futile, so the Seeligs may amend their complaint to the extent

they can plausibly allege the capacities in which they sue these defendants, the existence of

enforceable contracts between them, and coherent theories and facts of breach.  Should they

amend these claims, the Seeligs must remember to clearly distinguish between their allegations

against different defendants.

### ii.   Public accommodations (Claims 2,[5] 5, 6, 8, 22)

The Seeligs allege violations of the ADA based on the defendants' failure to provide

equal access to common elements located in their subdivision, which the Seeligs claim to be

public accommodations for ADA purposes.  The defendants contend that the subdivision's

common elements are reserved for the exclusive use of unit owners, so they do not constitute

---

[5] The defendants treat this FHA claim as an ADA claim for purposes of their motion.  I do not decide whether this claim is substantively an ADA claim because whether I construe it as such does not impact my decision not to dismiss.

public accommodations for ADA purposes.  The Seeligs respond that association CC&Rs provide for public use of streets, sidewalks, and a subdivision park, thereby facilitating an ADA cause of action for discriminatory access.

The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of . . . any place of public accommodation." 42 U.S.C. § 12182(a).  "Public accommodation" under the statute includes parks, places of exercise or recreation, and places of public gathering. 42 U.S.C. § 12181(7)(D), (I) & (L).

At this stage, the Seeligs plausibly allege that the common elements located within their subdivision, which include parks and pedestrian pathways, could constitute public accommodations for ADA purposes. ECF No. 11 at 5, 18, 20.  In arguing that the common elements are not public accommodations, the defendants rely on a portion of the CC&Rs that speaks to common element ownership. *Id.* at 63.  But other sections of the CC&Rs explicitly reference public access. *See* ECF Nos. 11 at 111 ("Streets and sidewalks within the Properties shall be or are dedicated as public . . . ."); 55-1 at 32 ("The Satellite Park shall be open to the public, but shall be maintained and repaired as the expense of the . . . Association . . . .").  While the defendants contend that there is a locking mechanism on at least one gate within the subdivision, that alone is an insufficient basis to conclude there is no public access to common elements.  I therefore decline to dismiss claims 2, 5, 6, 8, and 22.

### iii.   Rights of action (Claims 10, 31, 15, 16)

The Seeligs allege the defendants breached their statutory duties to: (1) permit dwelling modifications for reason of disability (claim 10); (2) refrain from prohibited community manager conduct (claim 31); and (3) manage the associations in good faith and with due care (claims 15 and 16).  The defendants argue that none of the three statutes on which the Seeligs base these

four claims provides a right of action relevant to the Seeligs' situation. The Seeligs respond by conceding to dismissal of claim 10, re-asserting claim 31, and explaining the misconduct that gives rise to claims 15 and 16, as well as the portions of the CC&Rs that they feel provide for their right of action in those latter two claims.

### 1. **Claim 10**

The Seeligs concede claim 10 should be dismissed, so I dismiss it without leave to amend.

### 2. **Claim 31**

The Seeligs claim the defendants engaged in prohibited community manager conduct under Nevada Revised Statutes (NRS) § 116A.640. The defendants argue that enforcement of that section is reserved to the Commission for Common-Interest Communities and Condominium Hotels, with oversight from the Director of the Department of Business and Industry. NRS § 116A.200. While parties are entitled to judicial review of Commission decisions, the defendants contend the statute does not explicitly provide a direct, private right of action in the courts. *Id.* § 116A.900(5). The Seeligs respond by restating their claim.

In the absence of an express private right of action, whether one may be implied is a question of legislative intent. *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 100-01 (Nev. 2008) (en banc). Three factors guide analyzing legislative intent: "(1) whether the plaintiffs are of the class for whose special benefit the statute was enacted; (2) whether the legislative history indicates any intention to create or to deny a private remedy; and (3) whether implying such a remedy is consistent with the underlying purposes of the legislative scheme." *Id.* at 101 (internal quotations and alterations omitted). However, "the absence of an express provision providing

for a private cause of action to enforce a statutory right strongly suggests that the [l]egislature did not intend to create a privately enforceable judicial remedy." *Id.*

The Seeligs are not members of the class for whose special benefit the statute was enacted. The statute provides that community managers shall not "disclose confidential information relating to a client." NRS § 116A.640. "Client" here means "an association that has entered into a management agreement with a community manager." NRS § 116A.045. Therefore, associations themselves are the class for whose special benefit the statute is intended, to guard against improper disclosures of their business or financial affairs when dealing with the management companies they retain.[6] The legislative history provides no basis for a different conclusion. *See* Assemb. B. 350 (Nev. 2009). While implying a homeowner cause of action may not hinder the underlying purpose of the legislative scheme, it is no more protective of association rights than the explicit terms of the statute, given the currently unimpeded ability of associations to represent their own interests.

The Nevada legislature did not intend to create a homeowner right of action in NRS § 116A.640, so I will not imply one. Amendment would be futile because no well-pleaded factual allegations could support the Seeligs' claim under the statute, so I dismiss claim 31 without leave to amend.

---

[6] Based on this statutory construction, to permit the Seeligs' claim 31 would require more than implying a homeowner right of action. If I imply a right of action, the Seeligs could sue for improper disclosures of confidential association business affair information. However, the Seeligs seek to sue for disclosures of some unspecified confidential personal information. I have no reason to believe that the alleged disclosures of confidential personal information constitute disclosures of confidential association business affair information. So for the Seeligs to properly bring claim 31, I would need to imply not only a homeowner right of action, but also a broadened statutory purpose to protect personal homeowner privacy in addition to the current construction's protection of association privacy. Such a statutory expansion must be left to the legislature.

### 3. __Claims 15, 16__

The Seeligs claim the defendants failed to manage the associations in good faith and with due care under NRS § 82.221, the Nevada statute governing nonprofit officer and director liability. The defendants argue that § 82.221 supports only derivative claims against the defendants, and not the private, individually concerned claims the Seeligs assert. The Seeligs respond by explaining the misconduct alleged and by referencing the portions of the CC&Rs they believe give rise to their claims.

NRS § 82.221 imposes a good-faith requirement on officers and directors and permits actions against them where there is "intentional misconduct, fraud[,] or knowing violation of the law." NRS §§ 82.221(1), (3) & (4). The statute does not distinguish between derivative and direct causes of action, and I am unaware of Nevada caselaw expressly addressing this issue.[7] "When the highest court of a state has not directly spoken on a matter of state law, a federal court . . . must generally use its own best judgment in predicting how the state's highest court would decide the [issue]." *Fast Trak Inv. Co. v. Sax*, 962 F.3d 455, 465 (9th Cir. 2020) (citation and internal quotations omitted). "In making this prediction, the federal court must ascertain from all available data what the state law is and apply it." *Id.* (citation and internal quotations omitted).

NRS § 82.221 outlines the duties of officers and directors of nonprofit corporations. NRS § 78.138 is its companion statute applicable to officers and directors of private corporations. Both statutes provide that officers and directors should exercise their "powers in good faith and with a view to the interests of the corporation." NRS §§ 82.221(1); 78.138(1). Both likewise explain the circumstances in which officers and directors may be personally liable

---

[7] The defendants cite *Savoy v. Savoy*, No. 3:17-cv-00058-MMD-VPC, 2017 WL 1536158, at *1-2 (D. Nev. Apr 26, 2017). While the action in *Savoy* was derivative, nothing in that decision reflects a holding that an action under § 82.221 must be derivative.

1   for wrongdoing. *See* NRS §§ 78.138(7); 82.221(4).  I have no reason to believe that Nevada

2   would treat nonprofit corporate officers differently than private corporate officers in the context

3   of individual liability.  The two statutes also provide similar approaches to individual director

4   and officer liability.  So I predict the state's general treatment of the two statutes would be the

5   same.

6         In Nevada, "directors and officers owe the fiduciary duties of care and loyalty to the

7   corporation." *Chur v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 458 P.3d 336, 340 (Nev. 2020)

8   (en banc) (citation omitted) (discussing application of NRS § 78.138).  To show that directors or

9   officers breached these duties, Nevada shareholders must allege that, "in light of [§ 78.138]," the

10  defendants "faced a substantial risk of liability in [a] derivative action." *Id.* at 341 (internal

11  quotations and citation omitted) (discussing the Tenth Circuit's proper interpretation of NRS

12  § 78.138).  Given that duties under Nevada's private corporation statute are owed to the

13  corporation and that failure to abide by these duties is vindicated through derivative claims, it

14  reasonably follows that claims brought under § 82.221 must also proceed derivatively.  I have no

15  reason to believe that Nevada would intend disparate treatment of officers and directors based on

16  whether they work for private or nonprofit corporations.  I therefore conclude that the Seeligs fail

17  to plausibly allege a claim under NRS § 82.221 because they sue the defendants on their own

18  behalf and do not plausibly allege some duty owed specifically to them as opposed to the

19  association generally.

20        As a result, I dismiss claims 15 and 16.  Amendment may not be futile, so the Seeligs

21  may amend their complaint to the extent they can plausibly allege derivative claims under NRS

22  § 82.221.

23  / / / /

1     **iv.  IIED (Claims 27, 28, 29)**

2         Claims 27, 28, and 29 allege IIED against Gubler, Fresinski, and Uribe for: allowing dogs

3 to jump and bark at a party wall; mounting surveillance cameras on their homes with views of

4 the Seeligs' home; filing police reports against the Seeligs; refusing to sign a construction

5 permission form; preventing the Seeligs from accessing common elements; parking a motorhome

6 on the street; and parking a boat on the street. ECF No. 11 at 36-39.  The defendants argue that

7 the Seeligs fail to state claims for IIED because none of the alleged conduct rises to the level of

8 extreme and outrageous.  The Seeligs respond that the alleged conduct was extreme and

9 outrageous and they raise a host of new allegations.[8]

10         The Seeligs' allegations do not amount to extreme and outrageous conduct such that

11 claims 27, 28, and 29 are plausible.  Parking vehicles on the street, installing security cameras on

12 one's own property, and inflicting other petty affronts are not acts that are outside all possible

13 bounds of decency such that they are utterly intolerable in a civilized society.  And the Seeligs

14 again offer no details about the nature or circumstances of the alleged false police reports.

15 Without more, I cannot conclude that the reports were plausibly extreme and outrageous.  As a

16 result, I dismiss the Seeligs' claims 27, 28, and 29.

17         Amendment may not be futile, so the Seeligs may amend their complaint to the extent

18 that they can provide plausible factual allegations that the dismissed conduct (or conduct

19 previously absent from the complaint) was extreme and outrageous.  As above, if the Seeligs

20

21 [8] These include allegations concerning the filing of restraining orders, a "be on the lookout"

22 order issued for Mr. Seelig, offensive social media posts, offensive comments made to public officials, and false accusations of dog poisoning, bomb threat responsibility, and "peeking in"

23 neighbors' windows.  As above, I do not consider new allegations that were not well-pleaded in the complaint.  If the Seeligs feel these new allegations are actionable under the IIED standards provided, they must properly plead them in an amended complaint.

1   choose to amend, they should keep in mind that the conduct alleged must be outside all possible

2   bounds of decency.  Petty neighborhood disputes will not suffice.  Additionally, while the

3   relevant motion for judgment on the pleadings does not argue failure to state a claim because of

4   no physical impact, dismissal on that ground would have been proper.  If the Seeligs choose to

5   amend these claims, they must apply the above guidance on IIED's physical impact requirement.

6                **v.  <u>Respondeat superior and negligent supervision (Claims 32, 33, 34)</u>**

7         The Seeligs allege that First Service Residential NV (FSR) is a principal management

8   company that oversees the conduct of its agents, the defendant associations.  The Seeligs further

9   contend that FSR negligently supervised the defendant associations and is liable for their

10   treatment of the Seeligs via respondeat superior.  The defendants argue that FSR is a

11   management company employed by the associations, and that, consequently, the Seeligs

12   mistakenly reverse the doctrines of negligent supervision and respondeat superior liability by

13   attempting to hold an agent (FSR) liable for acts of its principals (the associations).  The Seeligs

14   respond that FSR failed to properly manage the associations, that FSR employees contributed to

15   FHA and other violations, and that "the defendants" failed to properly supervise employees.

16         Under Nevada law, respondeat superior liability attaches when "(1) the actor at issue was

17   an employee, and (2) the action complained of occurred within the scope of the actor's

18   employment." *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1179 (Nev. 1996).

19   Negligent supervision requires "(1) defendant owed a duty of care to the plaintiff; (2) defendant

20   breached that duty by . . . supervising an employee even though defendant knew, or should have

21   known, of the employee's [problematic] propensities; (3) the breach was the cause of plaintiff's

22   injuries, and (4) damages." *Peterson v. Miranda*, 991 F. Supp. 2d 1109, 1118 (D. Nev. 2014).

23   An "employer has a duty to use reasonable care in the training, supervision, and retention of his

1  or her employees to make sure that the employees are fit for their positions." *Hall v. SSF, Inc.*,

2  930 P.2d 94, 99 (Nev. 1996).

3      At this stage, I must take all well-pleaded allegations in the complaint as true. *Iqbal*, 556

4  U.S. at 678.  The complaint describes FSR as "the Management Company for the OVME and

5  OVRLMA associations." ECF No. 11 at 41.  The Seeligs represent that this means FSR manages

6  OVME and OVRLMA as the associations' principal, not that FSR is the agent management

7  company hired by the principals OVME and OVRLMA.  Taking the Seeligs' allegations in the

8  complaint as true, I decline to dismiss claims 32, 33, and 34.  However, if the Seeligs' framing of

9  the relationship between these parties is indeed flawed in the ways the defendants describe, these

10 claims may fail at summary judgment.

11     If the Seeligs choose to amend, they should revise the entire complaint (and these three

12 claims, in particular) to include specific party names in their allegations instead of exclusively

13 using the catch-all "defendants."  While the defendants did not raise this criticism in their

14 motions, as the complaint stands it is difficult to ascertain whether the Seeligs' allege claims 32,

15 33, and 34 against FSR for the associations' conduct or for conduct of individual FSR

16 employees.  The burden to name parties with sufficient specificity such that claims may be

17 understood resides with the Seeligs. *McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996).

18                    **vi.  Mrs. Seelig**

19     Mrs. Seelig asserts the same claims as her husband.  The defendants argue that her claims

20 1-11, 15-26, and 31-34 should be dismissed because she is "not connected with the underlying

21 alleged disability and/or lack of access to the common elements" such that she may maintain

22 ADA, FHA, or related actions. ECF No. 52 at 13.  The Seeligs respond that Mrs. Seelig may

23 maintain actions under the ADA and FHA for associational discrimination, and that she was

1 verbally accosted and physically assaulted by Uribe and McAnally, respectively, during an

2 attempt to access the disputed pedestrian gate.

3      As discussed, Mrs. Seelig plausibly alleges that she may maintain actions under the ADA

4 given her association with Mr. Seelig. 42 U.S.C. § 3604(f)(2)(C).  The same is true under the

5 FHA. *See* 42 U.S.C. § 12182(b)(1)(E).  I thus decline to dismiss her claims on the basis that she

6 has no ADA or FHA right of action.  As above, I do not consider new allegations of verbal abuse

7 or assault that were not well pleaded in the Seeligs' complaint.  These must appear in an

8 amended complaint if the Seeligs wish them to be considered.

9           **c.  <u>Amendment</u>**

10      "[A] district court should grant leave to amend even if no request to amend the pleading

11 was made, unless it determines that the pleading could not possibly be cured by the allegation of

12 other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation omitted).  The

13 amended complaint must be a complete document in and of itself and will supersede the original

14 complaint in its entirety.  Any allegations, parties, or requests for relief from prior papers that are

15 not carried forward in the amended complaint will no longer be before the court.

16      The Seeligs are advised to support each claim with factual allegations because the

17 complaint "must contain sufficient allegations of underlying facts to give fair notice and to

18 enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

19 Cir. 2011).  When claims are alleged against multiple defendants, the complaint should clearly

20 indicate which claims apply to which defendant. *Renne*, 84 F.3d at 1179-80.  The Seeligs should

21 identify each defendant and support each claim with factual allegations about each defendant's

22 actions.  Where multiple claims are alleged, the complaint should identify which factual

23 allegations give rise to each particular claim.

## II.    <u>CONCLUSION</u>

I THEREFORE ORDER that defendant Ricky McAnally's motion to dismiss **(ECF No. 6) is granted in part**.  I dismiss claim 30 without prejudice.  The motion is denied in all other respects.

I FURTHER ORDER that the motions for judgment on the pleadings **(ECF Nos. 52, 55) are granted in part**.  I dismiss with prejudice claim 10 as to OVME, Gubler, Fresinski, Uribe, FSR, and Howard.  I also dismiss with prejudice claim 31 as to FSR and Howard.  Finally, I dismiss without prejudice claims 12, 13, and 14 as to Uribe, Fresinski, and Gubler; claim 15 as to OVME, Uribe, Fresinski, and Gubler; claim 16 as to OVRLMA, Uribe, Fresinski, and Gubler; claim 27 at to Gubler; claim 28 as to Fresinski; and claim 29 as to Uribe.

I FURTHER ORDER that the Seeligs may file an amended complaint curing the deficiencies identified in this order, if facts exist to do so.  Failure to file an amended complaint by December 30, 2021 will result in dismissal of the claims discussed above with prejudice.

DATED this 6th day of December, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE